ALAN B. PETERSON AND ANNA F. PETERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peterson v. Commissioner
Docket No. 3269-89
United States Tax Court
T.C. Memo 1991-399; 1991 Tax Ct. Memo LEXIS 428; 62 T.C.M. (CCH) 493; T.C.M. (RIA) 91399; August 14, 1991, Filed *428 Decision will be entered for the respondent. S. Thomas Ullman, for the petitioners. Howard P. Levine, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM FINDING OF FACT AND OPINION Respondent determined deficiencies in petitioners' income tax for the calendar years 1981, 1982, and 1983, in the amounts of $ 18,904, $ 26,831, and $ 25,029, respectively, and determined an addition to tax under section 6653(b) in the income tax of Alan B. Peterson for the calendar year 1981 in the amount of $ 9,452, and additions to tax of Alan B. Peterson under section 6653(b)(1) for the calendar years 1982 and 1983 in the amounts of $ 18,242 and $ 17,091, respectively. [1] For the calendar years 1982 and 1983, respondent determined that Alan B. Peterson was liable for the addition to tax under section 6653(b)(2) in each year in an amount equal to 50 percent of the interest on the deficiency. Respondent also determined that petitioners were liable for additions to tax under section 6661 for the years 1982 and 1983 in the amounts of $ 6,693 and $ 6,213.50, respectively, for substantial understatement of income tax. By a second amendment to answer filed September 11, 1990, respondent *429 alleged in the alternative that if petitioner, Alan B. Peterson, was not liable for the addition to tax for fraud for each of the calendar years 1982 and 1983, he was liable for the addition to tax for failure to timely file his returns for those years under section 6651(a)(1) in the amounts of $ 2,265.30 and $ 2,700.75, respectively, and for additions to tax under section 6653(a)(1) for the calendar years 1982 and 1983 in the amounts of $ 1,824.20 and $ 1,709.10, respectively, and under section 6653(a)(2) for each of those years in an amount equal to 50 percent of the interest attributable to the entire deficiency for each such year. The issues for decision, after concessions made by petitioners, are: (1) Whether petitioner, Alan B. Peterson, is liable for the addition to tax for fraud under section 6653(b) for the year 1981 and under section 6653(b)(1) and section 6653(b)(2) for *430 each of the years 1982 and 1983; (2) in the alternative, whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations and under section 6651(a)(1) for failure to timely file returns for each of the years 1982 and 1983; (3) whether petitioners are liable for the addition to tax under section 6661 for each of the years 1982 and 1983 for substantial understatement of income tax; and (4) whether the assessment and collection of a deficiency for the year 1981 is barred by the period of limitations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Fort Myers, Florida, at the time of the filing of their petition in this case, timely filed a joint Federal income tax return for the calendar year 1981. Petitioners filed a joint Federal income tax return for the calendar year 1982 on October 28, 1983. Petitioners had previously filed for an extension of time in which to file their 1982 income tax return to August 15, 1983. Petitioners filed a joint Federal income tax return for the calendar year 1983 on January 21, 1985. *431 Petitioners had previously been granted an extension of time within which to file their 1983 Federal income tax return until August 15, 1984. Each of these returns shows as the preparer "D. Welch-Enrolled Agent." After Alan B. Peterson (petitioner), graduated from high school, he spent four years in the Marine Corps. During his time in the Marine Corps from 1953 through 1957, petitioner rose in rank and when he left active duty was a sergeant. While in the Marine Corps, petitioner joined a private flying club and at the time he left the Marine Corps in 1957, he was a licensed pilot. Between 1957 and 1960, petitioner was a flight instructor at different air fields and completed 2,000 hours of flight time. In 1960, petitioner became a pilot for Allegheny Airlines, which later was taken over by U.S. Air and from 1960 until after the years involved in this case was a pilot either for Allegheny Airlines or U.S. Air. From 1978 throughout the period involved in this case, petitioner was a captain for U.S. Air, flying a Boeing 727-200 with a seating capacity of 160 passengers. As captain of the aircraft, petitioner was in charge of the flight crew and the airplane. During the years *432 petitioner was a pilot with Allegheny Airlines and U.S. Air, he had maintained his qualifications by taking the required written test and making satisfactory scores on periodic evaluations which took place generally twice a year. At no time during his career as a pilot was petitioner involved in any airplane accident which involved a loss of life. Petitioner heard about the Universal Life Church (sometimes ULC) from another U.S. Air pilot, Ron Urgites. Mr. Urgites was a recruiter for the Universal Life Church. Petitioner also heard of the Universal Life Church from another pilot with whom he had flown. On January 7, 1981, petitioner obtained a ULC charter number and ULC certificate as a pastor through Ron Urgites. Prior to applying for the charter from the Universal Life Church, Modesto, California, and a certificate as a pastor in that church, petitioner discussed his possible participation in ULC with his wife, Anna F. Peterson. At the time of the trial of this case, Mr. and Mrs. Peterson had been married for 32 years and had seven children who at the time of trial ranged in age from 18 to 31 years. Mrs. Peterson was adamantly opposed to petitioner's participation in ULC. *433 She felt uncomfortable about petitioner's participation in ULC and expressed her views to petitioner. Mrs. Peterson did not think participation in ULC was right and did not like the idea of ULC participation. Mr. and Mrs. Peterson discussed the tax benefit of petitioner's participation in ULC including a discussion of deductions of personal expenses for income tax purposes. Even though petitioner knew his wife was opposed to his participation in ULC, he paid the necessary funds for obtaining a charter, a certificate designating him as a pastor, and a document entitled "Universal Life Church Operations Manual." The address on this document was Universal Life Church, Inc., Headquarters, 601 Third Street, Modesto, California 95351. This document contained various instructions with respect to chartering a church, using a personal residence as a church headquarters, deducting certain expenses of the individual's home as church-related, and deducting amounts as payments to the pastor or for the pastor's benefit. It also contained instructions for monthly reports to the church of amounts spent for rent and mortgage payments, utilities and the like on the individual's home, and travel *434 allowances, automobile allowances, and furniture and fixtures expenses on the home as payments for the pastor. There were also instructions about memberships and meetings of the board of directors. On January 3, 1981, petitioner opened a checking account with the Palmetto Federal Savings and Loan Association (Palmetto) in the name of Universal Life Church, Inc. Petitioner executed the signature card as pastor, and he had the sole right to draw checks on the account. Petitioner deposited personal funds from his salary as an airline pilot into this account and used the account to pay various amounts of his living expenses, including mortgage payments, utility bills, department store bills, doctor bills, loan payments, credit card payments, and car payments. Payment from the ULC account on credit card bills, car payments, and mortgage payments included interest payments on those accounts. Anna F. Peterson completed the payee, date, amount, and purpose of the checks drawn on the ULC account at Palmetto, and petitioner executed these checks in accordance with his authorized signature on the account. The ULC account at Palmetto was in existence and used at least through the end of *435 1984. During the years 1981, 1982, and 1983, petitioner's salary from U.S. Air was $ 107,814, $ 119,278, and $ 127,346, respectively. Anna F. Peterson was a Roman Catholic, and she and petitioner's children attended a Roman Catholic church. She made contributions to the Catholic church she attended in yearly amounts of $ 1,000 or less. Petitioner was brought up as a Catholic. He attended Catholic schools and lived in Catholic homes. However, after he became an adult, he did not regularly attend Catholic services. Anna F. Peterson understood that the amounts she contributed to the Catholic church she attended were given to the church for whatever use the church needed to make of the funds. She also understood from her discussions with petitioner that the amounts placed in the ULC account at Palmetto would not be used for any purposes other than petitioners' living expenses and would not be parted with by petitioners. Although petitioner received a certificate as pastor of a local congregation of ULC, he never performed any functions such as a marriage ceremony or holding any form of formal religious services as a pastor and he never contacted local or State authorities concerning *436 his authority under State or local law as a pastor of a local congregation of ULC. There was no other pastor of petitioner's local congregation of ULC. There was not a secretary, a president, a vice-president, or treasurer of the congregation. No religious services, formal or informal, were held by the local congregation. In the reports prepared by petitioner for submission to ULC at Modesto, petitioner showed his wife and children as members of the local congregation even though his wife had stated to him that she in no way wanted to participate in his ULC activities. Petitioner was the only person authorized or required to vote with respect to making expenditures from the ULC account at Palmetto. The ULC in Modesto had no control over the local ULC account opened by petitioner, and did not tell petitioner where to conduct banking activities with respect to the local congregation or direct how any monies should be spent. ULC Modesto did not authorize expenditures from the local ULC account, and petitioner did not consult with anyone at ULC Modesto before he expended funds from the local ULC bank account. ULC Modesto did not receive, use, or have the ability to use funds that *437 petitioner deposited into his local ULC bank account. No audit of any kind was done by ULC Modesto of petitioner's local ULC bank account or the reports petitioner sent to ULC Modesto. Petitioner would not have allowed ULC Modesto to use the funds deposited into the local ULC bank account. After petitioner opened the local ULC bank account and paid his house mortgage payments and interest and other personal expenses from this account, his personal activities in the house did not change from what they had been prior to the time the expenses were paid from the ULC bank account. There were no votes by the local congregation on any resolutions, and no charter number or name was listed on the local ULC bank account. Petitioner for years prior to 1980 had prepared his tax returns with the assistance of a friend who put the figures on the return for him when petitioner furnished the figures. Around March 1, 1982, petitioner spoke with David Lee Welch (Mr. Welch), who is affiliated with Edwin Williams Company, about preparing petitioners' joint income tax return for 1980. Their 1980 income tax return was filed on March 3, 1982. Petitioners' 1981, 1982, and 1983 income tax returns *438 were also prepared by Mr. Welch. Petitioner took a schedule showing petitioners' income and deductions to Mr. Welch. After reading the figures on the schedule to Mr. Welch, he retained the schedule. When petitioner informed Mr. Welch that he made a charitable contribution of $ 38,251 in 1981, Mr. Welch inquired with respect to the contribution and was told that the contribution was to the Universal Life Church. Petitioner furnished Mr. Welch with a copy of the April 13, 1976, letter to Universal Life Church, Modesto, California, stating that Universal Life Church, Inc., Modesto, California, was exempt under section 501(c)(3) from Federal income tax. When asked by Mr. Welch for support for the amount of the charitable contribution claimed, petitioner showed Mr. Welch a statement he had received from Universal Life Church, Inc., Modesto, California, showing contributions in the amount of $ 38,251. The same procedure of furnishing to Mr. Welch the amounts of the claimed charitable contributions to Universal Life Church was followed by petitioner for 1982 and 1983 with respect to claimed charitable deductions of $ 56,762 and $ 57,058, respectively, except that no statement from Universal *439 Life Church, Modesto, was shown to Mr. Welch for 1983. Mr. Welch placed the designation, Universal Life Church, next to the contribution deduction claimed in each year. In his view, it was required when a contribution was in excess of $ 3,000, that the name of the recipient be shown. Based on figures given by petitioner to Mr. Welch for each of the years 1981, 1982, and 1983, interest on mortgage payments, credit card payments, and other indebtednesses were claimed as deductions on petitioners' returns even though the amounts had been paid by checks from the ULC account at Palmetto and included by petitioner in his claimed ULC charitable deductions. When petitioner furnished the list of charitable contributions to be deducted to Mr. Welch for each of the years 1981, 1982, and 1983, he knew that personal living expenses were not tax deductible. On January 15, 1981, petitioner filed with his employer a Form W-4 claiming 48 dependency exemptions. Petitioner subsequently filed another Form W-4 with his employer claiming 47 such exemptions. On both Forms W-4, petitioner stated that he did not expect to owe any income tax for the year and expected a refund of all income tax withheld. *440 When petitioner brought the summary work sheets showing income and deduction figures to Mr. Welch and read these figures to him, including claimed charitable deductions, interest deductions, and employee business expenses, he did not furnish Mr. Welch any bank statements, cancelled checks, deposit tickets, or any type of receipts to support any of the figures that were reflected on his income tax returns other than W-2 Forms and the statement from ULC Modesto. When Mr. Welch questioned petitioner as to his supporting documentation for each of the items which he furnished to Mr. Welch to be used in preparation of petitioners' income tax returns, petitioner advised Mr. Welch that he had supporting documentation or proof which he could produce were he required to do so by the Internal Revenue Service. Petitioner did leave a copy of the April 13, 1976, letter from the Internal Revenue Service to the Universal Life Church, Modesto, California, with Mr. Welch. Petitioner was aware that his tax returns for each of the years 1981, 1982, and 1983 were being prepared solely from his work sheets and that any false information in those work sheets would be reflected in the respective tax *441 return. Mr. Welch mailed petitioner income tax questionnaires to assist him in preparing petitioner's tax returns. Petitioner did not complete and return the questionnaires, but instead, prepared schedules of income and deductions to furnish to Mr. Welch. Petitioner did not advise Mr. Welch, and Mr. Welch did not know, that the amounts shown by petitioner as contributions to Universal Life Church for each of the years 1981, 1982, and 1983, were expended by petitioner for personal expenses. Neither did petitioner advise Mr. Welch that the claimed deductions to Universal Life Church were not direct payments to the Universal Life Church at Modesto, California. Prior to preparing petitioners' tax returns, Mr. Welch had no experience with preparing a return for anyone who claimed a deduction for a contribution to the Universal Life Church and has not since had an experience with anyone making such a claim. Petitioner prior to obtaining a charter number and certificate as a pastor from Universal Life Church and opening the ULC bank account over which he had complete control did not consult a lawyer or accountant or a financial advisor with respect to claiming charitable deductions *442 for amounts spent for his personal benefit from his ULC account at Palmetto. He consulted only his two pilot friends, one of whom was a recruiter for ULC, with respect to his charitable contributions to ULC. Petitioner did read the materials furnished him in connection with obtaining the charter number and pastor's certificate from the Universal Life Church, Modesto, but he did not follow the format set forth in those materials in most respects. An annual receipt of contributions was sent to petitioner for 1981 and 1982, from ULC Modesto, but since he did not submit a monthly or quarterly report to ULC Modesto in 1983, no annual receipt was sent to petitioner by Universal Life Church, Modesto, California, for that year. On their 1983 income tax return, petitioners claimed a deduction for sales taxes totaling $ 1,191 on the purchase of three automobiles some of which amount was included in claimed contributions to ULC since payment had been made from the ULC account at Palmetto. Interest deductions claimed by petitioner exclusive of mortgage interest for 1981, 1982, and 1983 were $ 8,475, $ 7,307, and $ 11,439, respectively, much of which was paid by checks drawn on the ULC account *443 at Palmetto and included in the claimed ULC charitable deduction. Respondent in his notice of deficiency to petitioners disallowed the claimed deductions for charitable contributions to Universal Life Church and made some other minor adjustments. He also determined additions to tax against petitioner, Alan B. Peterson, for fraud in each year involved and additions to tax against petitioners for substantial understatement for the years 1982 and 1983. Petitioners in their petition conceded that they were not entitled to the deductions claimed for contributions to the Universal Life Church, but claimed that a substantial amount of the payments were interest payments which they were entitled to deduct. At trial petitioners conceded all issues except the issues with respect to additions to tax and the period of limitations for 1981. OPINION Whether a part of an underpayment of tax is due to fraud under section 6653(b) and section 6653(b)(1) and (2) is a question of fact. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). Respondent has the burden of proving fraud and his proof must be by clear and convincing evidence. Castillo v. Commissioner, 84 T.C. 405, 408 (1985). *444 In order to meet his burden, respondent must show by clear and convincing evidence that a taxpayer intended to evade taxes known or believed to be owing. Kotmair v. Commissioner, 86 T.C. 1253, 1259 (1986). There are a number of activities which have been considered to be indications of fraud, such as conduct intending to conceal income or mislead the taxing authorities or otherwise prevent the collection of taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud means "actual intentional wrongdoing and the intent required is the specific purpose to evade tax believed to be owing [citation omitted]." Zell v. Commissioner, 763 F.2d 1139, 1142-1143 (10th Cir. 1985), affg. a Memorandum Opinion of this Court. However, since direct proof of a taxpayer's intent can rarely be obtained, generally fraud must be proven by circumstantial evidence and reasonable inferences drawn from such evidence. Filing of false Forms W-4 has been held to be highly indicative of fraud. Zell v. Commissioner, supra at 1145-1146; Rowlee v. Commissioner, supra at 1125. Petitioner contends *445 that in 1981, 1982, and 1983 he believed that he could follow the instructions from Universal Life Church in Modesto, California, and deduct any amounts that he deposited to an account in the name of ULC, even though he had full control over the account and spent the funds totally for his own benefit. Petitioner claims that when he saw the exemption letter to Universal Life Church, Modesto, California (now revoked), and the material sent him from ULC Modesto, he thought he had found some type of loophole that he could follow and not pay taxes on his income. We have considered petitioner's testimony as well as the other evidence of record and conclude that petitioner knew that he was not entitled to the claimed deductions for charitable contributions to the Universal Life Church, but took those deductions in each year with the intent to evade tax. In the first place, petitioner did not follow the instructions from Universal Life Church, Modesto. He deducted personal items which even those instructions did not state were deductible. Petitioner knew that he could not deduct amounts over which he maintained complete control and which paid for his personal living expenses. It is not *446 as if petitioner had not thought through the claimed deductions. His wife was unhappy with the situation and did not want to participate in it, but even with his wife's concern about claiming the deductions to the Universal Life Church, petitioner claimed these deductions. He did not inquire of an attorney, accountant, or financial consultant as to the legality of the deductions even after his wife expressed her concern. Petitioner even submitted his wife's name to ULC Modesto as a member of his congregation although she had told him she wanted no part of his ULC activities. Petitioner was aware that no amount of the claimed deductions actually went to the Universal Life Church in Modesto, California. He included interest payments in his claimed charitable deduction but also claimed deductions for these interest payments separately. He knew these interest payments were being deducted as charitable contributions but nevertheless deducted them a second time. Also petitioner did not inform his return preparer about the ULC account at Palmetto over which he had complete control, but rather merely gave the return preparer figures and showed him receipts from Universal Life Church *447 in Modesto and the April 13, 1976, exemption letter. Petitioner in this way clearly misled the return preparer leading him to believe that amounts had actually been sent to the Universal Life Church in Modesto, California. In addition to misleading the return preparer with his claim for charitable deductions to the Universal Life Church in Modesto, California, petitioner also filed false Forms W-4 to reduce the amount withheld from his salary. This also is an indication of fraud. Although petitioner would not admit to knowledge of problems that had arisen in connection with claimed deductions from Universal Life Church, in his discussions with his co-workers this must have been brought up. Mr. Welch, petitioner's return preparer, said he had heard something about investigation of the Universal Life Church, but was satisfied with the exemption letter and the statement from the church of the contributions. Petitioner, however, knew that he had not actually made these contributions to the Universal Life Church at Modesto, but that they represented payments of his living expenses. Petitioner commented on seeing a program about ULC on "60 Minutes" but still sought no advice with *448 respect to claimed deductions. At least by January 28, 1980 (see Abney v. Commissioner, T.C. Memo 1980-27, which was filed January 28, 1980), cases of this Court had held deductions comparable to those claimed by petitioner in this case with respect to amounts deposited in accounts of so-called charters or chapters of the Universal Life Church not to be deductible. Certainly when petitioner's wife questioned the propriety of petitioner's activities with respect to the Universal Life Church, had petitioner not been intending to defraud, he would have sought advice with respect to the deductions. Finally, petitioner knew that he could not deduct an amount as a charitable contribution and deduct the same amount as an interest deduction. Nevertheless, he did this in each of the years here in issue. Petitioner claims that his return preparer led him to believe the claimed deduction to ULC was proper. However, petitioner did not furnish complete information to his return preparer and knew he did not give him complete information. Petitioner must have known he could not conceal information from his return preparer and then rely on the return preparer's treatment *449 of an item with respect to which information had been concealed. Petitioner also claims his use of the name "Universal Life Church" on his return mitigates against fraud. Actually the use of "Universal Life Church" on the return as recipient of donations appears to be an attempt to mislead by indicating that an amount went to ULC Modesto when in fact no amount did go to ULCModesto, and petitioner knew it did not. Petitioner knew he was claiming deductions for amounts he spent for personal living expenses. Considering the evidence as a whole, we conclude that petitioner's underpayment of tax in each of the years here in issue was due to fraud with intent to evade tax. We therefore sustain respondent's determination of the additions to tax for fraud against Alan B. Peterson under section 6653(b) for 1981, and section 6653(b)(1) and (2) for 1982 and 1983 as determined in the notice of deficiency. Clearly in this case there was a substantial understatement of income tax by petitioners. Petitioners make no real argument with respect to the addition under section 6661. In any event, petitioners have failed to show error in respondent's determination of the addition to tax under *450 section 6661. The burden is on petitioners to show error with respect to respondent's determination of addition to tax under section 6661. For the same reasons we hold that petitioner is liable for the addition to tax for fraud in 1981, we hold that petitioners filed a false and fraudulent return for that year so that assessment and collection of tax for that year is not barred by the the period of limitations. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue.↩